PENOBSCOT ENERGY RECOVERY
CO., Plaintiff,

v.

BOS–HATTEN, INC., Defendant.

Civil No. 99–138–B–C.

United States District Court,
D. Maine.

Aug. 30, 2000.

Kevin G. Libby, Monaghan, Leahy, Hochadel & Libby, Portland, ME, for Penobscot Energy Recovery Co., plaintiff.

Frederick J. Badger, Jr., Richardson, Whitman, Large & Badger, Bangor, ME, for Bos–Hatten Inc, defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

Before the Court is Defendant's Motion for Summary Judgment pursuant to Fed. R.Civ.P. 56 (Docket # 11). For the reasons discussed below, the Court will grant the Motion.

Plaintiff's claims, sounding in breach of warranty, negligence and strict liability, arise out of the failure of a by-pass condenser at the Penobscot Energy Recovery Company waste management facility ("PERC facility") in Orrington, Maine. In its Motion for Summary Judgment, Defendant argues that it is entitled to a judgment in its favor as a matter of law.

## I. BACKGROUND

The Court considers the facts as set out below in deciding the motion, construing them in the light most favorable to the nonmoving party.

The PERC facility was constructed in 1985 pursuant to a contract between the

Plaintiffs and General Electric Company ("GE"). Pursuant to this contract, GE contracted with Defendant Bos–Hatten to construct a by-pass condenser for the facility. Bos–Hatten delivered and installed the by-pass condenser in January 1987.

On February 7, 1997, the by-pass condenser at the PERC facility failed, setting off a chain reaction that damaged the boiler tubes. Pursuant to the safety protocol, the affected boiler was shut down immediately. As a result of the by-pass condenser's failure, Plaintiff sustained damage to its boilers and had to temporarily suspend operations at the facility.

Based on an expert's review of the by-pass condenser following the malfunction, Plaintiff now alleges that the by-pass condenser was improperly designed and constructed. *See Aff. of Ara D. Nalbandian, P.E.* (Docket # 20). Plaintiff claims that this improper design and construction of the by-pass condenser surfaced ten years after its installation, causing the PERC facility to sustain property damage, which, in turn, required PERC to suspend operations and to lose profits.

## II. DISCUSSION

As an initial matter, the parties have agreed that Defendant is entitled to summary judgment on Plaintiff's warranty claim (Count III) since the claim is time barred. *See Am. Compl. p. 3* (Docket # 7). The Court agrees that the four-year statute of limitations on a warranty claim expired long before the Plaintiff filed its claim. *See* 11 M.R.S.A. § 2–725.

What remains are the Plaintiff's two tort claims sounding in negligence (Count I) and strict liability (Count II). For the reasons laid out below, the Court similarly finds these tort claims are barred by the statute of limitations.

■ Defendant's Motion For Summary Judgment initially argues that PERC's tort claims were barred by Maine's adoption of the "economic loss doctrine." *See Oceanside at Pine Point*

*Condominium Owners Assoc. v. Peachtree Doors, Inc.,* 659 A.2d 267 (Me.1995). Pursuant to this doctrine, Maine does not permit tort recovery "for a defective product's damage to itself." *Id.* at 270. To determine what is the product versus what is other property, the courts "look to the product purchased by plaintiff, as opposed to the product sold by the defendant." *Id.* at 271.

■ Applying this rule, it is clear the Plaintiff purchased the PERC facility which contained Defendant's by-pass condenser as a component. As a result of the by-pass condenser's failure, Plaintiff sustained damage to other parts of its facility that were part of the same "purchased product" under its contract with GE. *See id.* (finding that plaintiffs had purchased finished condominium units and that the windows were simply part of those units). Thus, it would appear that PERC's tort claims are barred by the economic loss doctrine.

In response, Plaintiff initially argued that its tort claims fit within an exception to the economic loss doctrine that allows plaintiffs to recover via a tort claim when a product poses an unreasonable risk of injury although no injury has occurred. Since its adoption of the economic loss doctrine in 1995, the Law Court has neither explicitly adopted nor rejected any exception to the doctrine's application.

After the parties filed their briefs on Defendant's Motion for Summary Judgment, the Law Court decided the case of *Dunelawn Owners' Ass'n v. Gendreau,* 2000 ME 94, 750 A.2d 591 (2000) (decided May 19, 2000). Pursuant to this Court's July 13th Order (Docket # 21), the parties have filed briefs arguing the effect of this recent Law Court case on the Plaintiff's tort claims. After reviewing the parties' arguments, the Court concludes that Plaintiff's tort claims are time barred pursuant to the Law Court's decision in *Dunelawn.*

The tort claims pressed by the plaintiffs in *Dunelawn* were based on facts analo-

gous to the facts presented here. *See id.* at 592–93. Essentially, plaintiffs had purchased a condominium unit in November 1985. They began to experience electrical problems in the unit in late 1994 or early 1995. In February 1995, plaintiffs suffered damage to the condo units due to an electrical fire. Following the fire, they sued the builders of the units in July 1998 alleging that insufficient electrical wiring or deficiently installed electrical wiring caused their economic loss. The Law Court found that plaintiffs' cause of action accrued at the time of purchase in 1985 and that the statute of limitations had run, despite the plaintiffs' arguments that their injury was sustained in February 1995. *See id.* at 595–96. Therefore, the Law Court upheld granting summary judgment for the defendants based on statute of limitations and explicitly refused to consider the defendants' argument that plaintiff's claims were also barred by the economic loss doctrine. *See id.* at 595 n. 11.

█ Similarly, in this case, PERC alleges that the by-pass condenser, which was part of the purchased facility, was improperly designed and constructed. PERC filed its tort claims arising out of these allegations on May 28, 1999. *See Compl.* (Docket # 1).[1] Assuming the allegations are true, under *Dunelawn,* Bos–Hatten breached its duty to PERC at the time it delivered and installed the by-pass condenser in 1987 and the statute of limitations on the tort claims arising out of this breach ran six years later in 1993. *See* 14 M.R.S.A. § 752. Bos–Hatten has asserted statute of limitations as an affirmative defense to all of PERC's claims. *See Def. Answer* (Docket # 2). Pursuant to the Law Court's decision in *Dunelawn,* the Court finds Defendant is entitled to summary judgment on Plaintiff's negligence

and strict liability claims because the statute of limitations has run.

Accordingly, it is **ORDERED** that the Motion for Summary Judgment by Defendant Bos–Hatten, be, and it is hereby, **GRANTED.**[2]

---

1. Plaintiffs later filed an Amended Complaint that did not substantially change its tort claims. *See Am. Compl. (Docket # 7).*

2. To the extent Plaintiff asserted a motion to amend its complaint in its response to Defendant's Motion for Summary Judgment, such a motion to amend is **DENIED**. *See* Objection

to Def.'s Mot. for Summ. J. and Incorporated Mem. of Law at 2 n. 1. Even if the Court were to give Plaintiff another opportunity to amend its complaint, the Court would reach the same conclusion under *Dunelawn* for the reasons explained above.